

**IT IS ORDERED as set forth below:**

**Date: February 1, 2021**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-53827-WLH |
| FRANKLIN ABREU, | CHAPTER 7 |
| Debtor, | |
| LILLIAN L. WASHINGTON, | ADVERSARY PROCEEDING |
| Plaintiff, | NO. 19-5301-WLH |
| v. | |
| FRANKLIN ABREU, | |
| Defendant. | |

## ORDER ON COMPLAINT

**THIS MATTER** is before the Court on the complaint which seeks a determination a state court judgment against the Debtor is not dischargeable pursuant to sections 523(a)(3)(B) and 523(a)(6) of the Bankruptcy Code.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(I). For the reasons given below, the Court finds Ms. Washington's debt is nondischargeable in part.

## I.    FACTS

Lillian L. Washington ("Ms. Washington") and Franklin Abreu ("Mr. Abreu") met online in 2012.  Mr. Abreu has been employed by MARTA as an electronic technician since at least 2012 but, at the time the parties met, Mr. Abreu was homeless and would often sleep at work or rent hotel rooms.  In June 2012, Ms. Washington invited Mr. Abreu to her home located at 3607 Heritage Estates, Lithonia, Georgia 30038.  Mr. Abreu came to stay with Ms. Washington and ultimately ended up living with her for three years.  Mr. Abreu moved out in May 2015.

After several months, when it became clear Mr. Abreu's stay was not temporary, Ms. Washington asked Mr. Abreu to pay her rent to help cover her mortgage and other expenses.  The parties did not have a written agreement regarding rent.  While Mr. Abreu says he agreed to contribute to the household as he could by paying for other items such as utilities, Mr. Abreu made no rent payments until May 2013.  The parties discussed paying $200-$400 a month.  At some point, he agreed to pay her $500 a month rent.  He then began making payments to Ms. Washington somewhat regularly, though he missed a payment in December 2013.  The amount he paid each month varied.  The payments were mostly $500 until May 2014, at which point Ms. Washington requested Mr. Abreu pay more.  He then paid $1,200, reportedly for May and June 2014 rent.  Mr. Abreu paid Ms. Washington in July 2014, but he did not make a payment in August and September 2014.  Mr. Abreu continued to make inconsistent payments to Ms. Washington of $600 a month

2

on average until February 2015.  Mr. Abreu missed a payment in January 2015, and he paid no rent for March, April, and May 2015.  At one point, Ms. Washington asked Mr. Abreu to pay $750 a month.  He responded he would move out rather than pay that amount.  On May 1, 2015, the parties executed a verification of rent, which Mr. Abreu submitted to rent an apartment of his own, stating he had paid monthly rent of $550 a month to Ms. Washington.

Ms. Washington added Mr. Abreu to a pre-paid legal plan she had through her employer. The services were intended to provide Mr. Abreu with assistance in ongoing litigation with his former spouse.  Ms. Washington contends Mr. Abreu agreed to reimburse her for the added cost associated with coverage but, once benefits were active, Mr. Abreu refused to reimburse her for the benefit.  Mr. Abreu denies ever agreeing to reimburse Ms. Washington for the benefit and contends he never asked to be added to the plan.

Ms. Washington contends Mr. Abreu was emotionally and physically abusive during their relationship, which Mr. Abreu vehemently denies.  At one point, emotions between the parties flared when Ms. Washington took an iPad from Mr. Abreu.  Ms. Washington went into the bathroom and locked the door.  Mr. Abreu tried to force the door open and kicked the door open, physically damaging the door and wall in the process.  The police were called, though neither Ms. Washington nor Mr. Abreu was present when they arrived at the scene.

While Mr. Abreu was living with Ms. Washington, Ms. Washington purchased a 2005 Cadillac SRX which she allowed Mr. Abreu to drive.  Ms. Washington made the monthly payments on the Cadillac.  Ms. Washington contends Mr. Abreu purposely damaged the vehicle by driving the car into a parked vehicle; Mr. Abreu denies willfully damaging the car.  He admits the car was damaged and the bumper needed to be replaced, but he states he accidentally bumped into a parked

car.  He also states he properly maintained the vehicle and paid for necessary repairs and to replace the bumper.

Once Mr. Abreu moved out in May 2015, Mr. Abreu indicated he was interested in purchasing the vehicle, and Ms. Washington allowed Mr. Abreu to continue using the Cadillac in return for monthly payments.  Ms. Washington agreed to waive a few payments in exchange for keeping a dresser and TV owned by Mr. Abreu.  After a few months, Ms. Washington asked Mr. Abreu to make the agreed upon monthly payments for the car.  The parties did not have a written agreement regarding the vehicle but they both testified to the agreement.  Mr. Abreu did not pay for continued use of the car because he believed she had retained some of his property.  Ms. Washington swore out an arrest warrant and the car was ultimately returned to Ms. Washington in November 2015.

Ms. Washington filed a lawsuit against Mr. Abreu in magistrate court in November 2015. The DeKalb County Magistrate Court entered a judgment in favor of Ms. Washington, which Mr. Abreu appealed.  The State Court of DeKalb County, Georgia held a bench trial and entered a judgment on August 16, 2018 in favor of Ms. Washington for $9,000.  The judgment is comprised of $4,200 for back rent, $1,800 for the use of the Cadillac, $1,571.69 for the insurance benefits Ms. Washington paid, $700 for the door and wall damage, $220 for court costs, and $500 for the deductible for damage to the Cadillac.

Mr. Abreu filed for relief under Chapter 7 of the bankruptcy code on March 8, 2019.  While Ms. Washington was listed as a creditor on Schedule D and Mr. Abreu's creditor matrix, the petition did not include an address for her.  Consequently, Ms. Washington was not served with the notice of meeting of creditors and the deadline to file a complaint to object to the

dischargeability of a particular debt and/or the Mr. Abreu's discharge, which was June 7, 2019.
(See Bankr. Doc. No. 8.)

Mr. Abreu filed a motion to avoid Ms. Washington's judicial lien on May 28, 2019 with a
certificate of service showing Ms. Washington was served (Bankr. Doc. No. 13). The Court
entered an order denying the motion to avoid lien without prejudice on June 27, 2019 (Bankr. Doc.
No. 16). The Court vacated the order on July 11, 2019 (Bankr. Doc. No. 18), and an order granting
the motion to avoid lien was entered on July 12, 2019 (Bankr. Doc. No. 19). All the orders show
Ms. Washington on the distribution list. Ms. Washington filed a motion to reconsider the order
granting the motion to avoid lien on July 26, 2019 (Bankr. Doc. No. 23). She filed an objection to
dischargeability in the main bankruptcy case on July 29, 2019 (Bankr. Doc. No. 25). On
September 10, 2019, Ms. Washington initiated this adversary proceeding by filing the complaint
seeking a determination the $9,000 judgment against Mr. Abreu is nondischargeable pursuant to
sections 523(a)(3) and 523(a)(6) of the Bankruptcy Code. Mr. Abreu answered the complaint and
filed a counterclaim for attorney's fees.

The Court held a trial on the complaint on January 20, 2020. Ms. Washington, Mr. Abreu,
and Mr. Abreu's counsel (Louis McLendon) appeared by video. After considering the evidence
presented and argument of the parties, the Court took the matter under advisement.

## II.    ANALYSIS

A presumption exists all debts owed by the debtor are dischargeable unless the party
contending otherwise proves nondischargeability. 11 U.S.C. § 727(b). The purpose of this "fresh
start" is to protect the "honest but unfortunate" debtor. U.S. v. Fretz (In re Fretz), 244 F.3d 1323,
1326 (11th Cir. 2001). Exceptions to discharge are, therefore, narrowly construed against the
creditor and in favor of the debtor, and the burden is on the creditor to prove nondischargeability

by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 287-88 (1991); St. Laurent

v. Ambrose (In re St. Laurent), 991 F.2d 672, 680 (11th Cir. 1993).

      **a.  Section 523(a)(3)**

Ms. Washington seeks a determination the debt owed by Mr. Abreu is nondischargeable

pursuant to section 523(a)(3)(B), which provides a claim is not discharged if it is:

> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if
> known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> > (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of
> > this subsection, timely filing of a proof of claim and timely request
> > for a determination of dischargeability of such debt under one of
> > such paragraphs, unless such creditor had notice or actual
> > knowledge of the case in time for such timely filing and request[.]

11 U.S.C. § 523(a)(3)(B).  Pursuant to this section, a debt may be excepted from discharge if the

creditor has a debt that was neither listed nor scheduled, had no actual knowledge of the bankruptcy

case prior to the deadline for filing a nondischargeability complaint, and has a claim of the type

specified in section 523(a)(2), (4), or (6).

"An elementary and fundamental requirement of due process in any proceeding which is

to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  The notice

must not only reasonably convey the required information, but it must also "afford a reasonable

time for those interested to make their appearance."  Id. at 314.  "A key function of the notice

provided to a creditor in a bankruptcy proceeding is to give the creditor the opportunity to file a

proof of claim and, where the debt is potentially nondischargeable, to request a determination of

nondischargeability."  Tidwell v. Smith (In re Smith), 582 F.3d 767, 779 (7th Cir. Ill. 2009)

(citations omitted).  The debtor has the burden of proving that a creditor had notice or actual

knowledge of the bankruptcy proceeding.  Regents of the Univ. of Cal. v. Paylan (In re Paylan), 390 B.R. 432, 438 (Bankr. M.D. Fla. 2008); In re Johnson, 208 B.R. 746, 750 (Bankr. S.D. Ga. 1996).

A debtor must not only list the creditor but must also include a complete and accurate address.  See In re Johnson, 521 B.R. 912, 915 (Bankr. W.D. Ark. 2014) (though creditor was "nominally listed," the debtor failed to use the correct address).  Including an incorrect address is not notice reasonably calculated to inform a creditor about a bankruptcy case, and courts consistently hold that a creditor listed at an incorrect address does not have notice of a bankruptcy case.  See e.g., Rion v. Spivey (In re Springer), 127 B.R. 702, 707 (Bankr. M.D. Fla. 1991); In re Fitzgerald, 2020 WL 5745973 (Bankr. M.D. Fla. May 18, 2020).

Section 523(a)(3)(B) is quite clear: "the creditor must either have notice of the bankruptcy or have actual knowledge of the bankruptcy in time to permit timely filing of a proof of claim [or dischargeability complaint]."  Springer, 127 B.R. at 707.  "In the bankruptcy context, the Eleventh Circuit has held that actual knowledge of the case is sufficient to satisfy constitutional due process requirements."  Ford Bus. Forms, Inc. v. Sure Card, Inc., 180 B.R. 294, 295 (S.D. Fla. 1995); see also Byrd v. Alton (In re Alton), 837 F.2d 457 (11th Cir. 1988).  In Alton, 837 F.2d 457, the court explained that "[t]he statutory language [of section 523(a)(3)(A) and (B)] clearly contemplates the mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates."  Id. at 460.  "This furthers the bankruptcy policy of affording a 'fresh start' to the debtor by preventing a creditor, who knew of a proceeding but who did not receive formal notification, from standing back, allowing the bankruptcy action to proceed without adjudication of his claim, and then asserting that the debt owed him is [non]dischargeable."  Id.  In In re Gray,

7

57 B.R. 927 (Bankr. D.R.I. 1986), aff'd and remanded, 60 B.R. 428 (D.R.I. 1986), the bankruptcy court defined actual knowledge for purposes of section 523(a)(3) to mean "knowledge of facts sufficient to apprise the creditor that a case was actually filed, and where that proceeding is pending." Id. at 932.

Even if a creditor has actual knowledge of the case, actual knowledge may be insufficient if knowledge is not received in time to allow the creditor to timely file a complaint regarding dischargeability.  A creditor must have knowledge of the bankruptcy proceeding "at a date early enough . . . to act upon their knowledge." Ramos v. Compton (In re Compton), 891 F.2d 1180, 1185 (5th Cir. 1990); see also Walker v. Wilde (In re Walker), 927 F.2d 1138, 1145 (10th Cir. 1991) (finding creditor learned of bankruptcy case "in ample time" to prepare and timely file the necessary request for determination of dischargeability); Muse v. Muse (In re Muse), 289 B.R. 619, 623 (Bankr. W.D. Pa. 2003) (creditor had "ample opportunity" to file a complaint before the deadline to file suit had passed); Walker v. Hammons (In re Hammons), 252 B.R. 97, 101 (Bankr. N.D. Miss. 2000) (creditor learned of bankruptcy "well in advance of" of bar date).

While the facts and circumstances surrounding each case vary, courts have generally found thirty days' notice to a creditor is sufficient to satisfy section 523(a)(3)(B).  See Mfrs. Hanover v. Dewalt (In re Dewalt), 961 F.2d 848, 851 (9th Cir. 1992).  Courts agree that notice received just days before the deadline to file a complaint is ordinarily *not* sufficient notice to allow a creditor to take meaningful action.  See e.g., Hathorn v. Petty (In re Petty), 491 B.R. 554, 560 (8th Cir. B.A.P. 2013) (six-days' notice of deadline insufficient); Georgia Lottery Corp. v. Koshy (In re Koshy), 2010 WL 4226609 (Bankr. N.D. Ga. Sept. 27, 2010) (less than a day's actual notice of bankruptcy case insufficient); Strickland v. Barr (In re Barr), 2009 WL 6499257 (Bankr. N.D. Ga. Feb. 9, 2009) (at most six days' actual notice insufficient); Penland v. Bryan (In re Bryan), 448 B.R. 866

(Bankr. M.D. Ga. 2011) (four days' notice, which included a weekend, insufficient); The Sophir
Co. v. Heiney (In re Heiney), 194 B.R. 898, 902–03 (D. Colo. 1996) (18-days' notice insufficient);
but see Grossie v. Sam (In re Sam), 894 F.2d 778 (5th Cir. 1990) (18 days' notice sufficient).

        While Mr. Abreu knew Ms. Washington's address when he filed bankruptcy (he sent
correspondence regarding the state court action to her correct address), Mr. Abreu admits Ms.
Washington's address was not listed in his bankruptcy petition, and Mr. McLendon acknowledged
at trial that he failed to add Ms. Washington's address to Mr. Abreu's bankruptcy petition and
creditor matrix.  The question is whether Ms. Washington nevertheless received actual notice of
Mr. Abreu's bankruptcy case in time to object to dischargeability.

        The only evidence presented by Mr. Abreu as to when Ms. Washington learned of the
bankruptcy case was the filing of the motion to avoid lien.  Mr. Abreu filed a motion to avoid
judicial lien on May 28, 2019, and the certificate of service states the motion was mailed to Ms.
Washington at 3607 Heritage Estates, Lithonia, GA 30038 that same day.  Mr. Abreu does not
contend Ms. Washington received notice prior to filing the motion to avoid lien.  Ms. Washington
acknowledges the address on the certificate of service was correct, but she states she did not receive
the motion.  She contends she did not learn about Mr. Abreu's bankruptcy case until sometime in
July 2019, when she received the Court's orders on Mr. Abreu's motion to avoid judicial lien, well
after the June 7, 2019 deadline to file a complaint to object to dischargeability.  Even assuming
Ms. Washington did receive a copy of the motion to avoid lien soon after it was filed on May 28,
Ms. Washington would have at most had a week to ten days' notice of the bankruptcy case before
the June 7 deadline to file a complaint.  The Court finds such notice is insufficient under the
circumstances for Ms. Washington, who is not represented by counsel and unfamiliar with
bankruptcy, to timely file an objection to dischargeability.  The Court concludes Ms. Washington

had neither notice of Mr. Abreu's bankruptcy case nor actual knowledge of the case in time to permit timely filing of complaint objecting to dischargeability.

### b. __Debt of a Kind__

The next question is whether Ms. Washington's claim is of the type specified in section 523(a)(2), (a)(4) or (a)(6). Courts are divided on the level of proof necessary to establish whether a debt is "of a kind specified in section 523(a)(2), (4), or (6)." In re Real, 2018 WL 2059603, at *6 (Bankr. M.D. Fla. Apr. 30, 2018). Some courts have held a creditor need only establish a colorable claim. See, e.g., Keenom v. All Am. Marketing (In re Keenom), 231 B.R. 116, 126 (Bankr. M.D. Ga. 1999). These courts have held an omitted creditor should not be required to prove the merits of its claim; rather, the creditor must merely establish the existence of a colorable or viable claim under section 523(a)(2), (4) or (6). See D.A.N. Joint Venture III, LP v. Wier (In re Wier), 2012 WL 5334765, at *2 (Bankr. N.D. Ga. Oct. 1, 2012).

Other courts have held the creditor bears the burden of establishing that the omitted debt is of the kind specified in section 523(a)(2), (4), or (6). See Daniels v. Howe Law Firm, P.C. (In re Daniels), 591 B.R. 814, 822-23 (Bankr. N.D. Ga. 2018); see also Loud v. Richie (In re Richie), 380 B.R. 868, 870-71 (Bankr. M.D. Fla. 2007); Jones v. Warren Construction (In re Jones), 296 B.R. 447, 450-51 (Bankr. M.D. Tenn. 2003). Requiring the creditor to prove the merits of her underlying claim "simply states the obvious policy choice already made by Congress with respect to debtors who fail to list creditors: the short time periods and exclusive jurisdiction that a scheduled defrauded creditor faces under [section] 523(c) and Bankruptcy Rule 4007(c) are forfeited when the debtor fails to schedule a claim that would be nondischargeable under [section] 523(a)(2), (4) or (6)." Daniels, 591 B.R. at 823 n.8 (citing Jones, 296 B.R. at 451). As the court noted in Daniels, "[a]llowing an omitted creditor to establish nondischargeability of a debt under

section 523(a)(3)(B) by merely showing a colorable claim would bar the discharge of inadvertently omitted debts using a different standard than creditors whose claims were scheduled, which is hard to square with the policies that generally favor a robust discharge."  591 B.R. 823 n.8.

The Court agrees with those courts that have held an omitted creditor must not only prove lack of notice but must also prove the merits of her claim under section 523(a)(2), (4) or (6). Section 523(a)(3)(B) does not broaden the grounds for holding a debt nondischargeable.  Rather, the section merely allows a creditor who did not learn of the bankruptcy case with sufficient time to timely file a complaint to file one after the deadline has passed, and a creditor proceeding under section 523(a)(3)(B) must still establish the merits of her claim, i.e. that she is entitled to a determination the debt is nondischargeable pursuant to section 523(a)(2), (4), or (6).  Accordingly, the Court will consider whether Ms. Washington has proven her claim is nondischargeable pursuant to section 523(a)(6).

### c.  Section 523(a)(6)

A debt is nondischargeable under section 523(a)(6) if it arises from "willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6). Under section 523(a)(6), a creditor must prove a willful and malicious injury.  Willfulness is "an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another."  Maxfield v. Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012) (citations omitted).  "'Malicious' means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'"  Id. (citation omitted).  But the debtor, through his acts, must have actually intended the *injury*, "not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original).  The plaintiff must show the debtor "had a subjective motive to inflict injury or believed his conduct was substantially certain

11

to cause injury." Hot Shot Kids, Inc. v. Pervis (In re Pervis), 512 B.R. 348, 376 (Bankr. N.D. Ga. 2014). The debtor's subjective intent may be inferred from surrounding circumstances. Id.

The state court entered a judgment in favor of Ms. Washington based on the following damages, each of which the Court will consider in turn: $700 for door and wall damage, $1,571.69 for insurance benefits, $500 for a car insurance deductible, $4,200 for back rent, $1,800 for the use of a Cadillac, and $220 for court costs.

    i.  Door and Wall Damage

Ms. Washington contends the $700 awarded to her for damage to her door and wall is nondischargeable because Mr. Abreu willfully and maliciously damaged her property when he deliberately kicked in a door.

As noted above, a debtor is responsible for a "willful" injury when he commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury. Mr. Abreu deliberately kicked the door, causing physical injury to Ms. Washington's property. Mr. Abreu intended to cause the harm, or it was at least substantially certain to occur, meeting the element of willfulness. Mr. Abreu also acted maliciously. To prove maliciousness, Ms. Washington need not show the Mr. Abreu intended ill will toward her or her property, just the act was wrongful and without just cause or excessive. The Court finds there was no basis for Mr. Abreu's actions. Ms. Washington may have been refusing to return Mr. Abreu's iPad at the time, but that does not make his actions right. At a minimum, the Court finds Mr. Abreu's actions kicking down the door were excessive under the circumstances. There was no threat of imminent harm to Mr. Abreu and eventually Ms. Washington would leave the bathroom. Accordingly, Mr. Abreu's acts were malicious because they were wrongful and without just cause and excessive.

The Court concludes the $700 for damages sustained to Ms. Washington's door and wall were caused by willful and malicious injury and are nondischargeable.

    ii.  <u>Insurance Benefits</u>

Ms. Washington contends the damages for insurance benefits should be nondischargeable because Mr. Abreu willingly agreed to reimburse Ms. Washington for adding him to a pre-paid legal plan she had through her employer. Once added, she alleges Mr. Abreu willfully refused to reimburse her, which caused her an additional financial burden. Mr. Abreu denies that he ever requested Ms. Washington add him to her employer benefits.

The Court finds Ms. Washington has not met her burden of demonstrating that Mr. Abreu's conduct regarding Ms. Washington's insurance benefits rises to the level of nondischargeable conduct under section 523(a)(6). While Mr. Abreu declined to reimburse Ms. Washington, there is no evidence Mr. Abreu acted maliciously. There is simply no evidence Mr. Abreu even asked Ms. Washington to add him to the plan let alone intended to injure Ms. Washington. Accordingly, the Court finds the $1,571.69 for insurance benefits was not based on willful and malicious conduct and is dischargeable.

    iii.  <u>Car Insurance Deductible</u>

The state court ordered Mr. Abreu to pay $500 for the car insurance deductible Ms. Washington paid to fix damage to the Cadillac. Ms. Washington contends this should be deemed nondischargeable because Mr. Abreu physically damaged the car when he purposely drove it into a parked vehicle. Mr. Abreu admits the vehicle was damaged, but he denies that the damage was in any way intentional and states it happened when he accidentally drove the Cadillac into a parked car.

Damages stemming from car accidents are not automatically nondischargeable pursuant to section 523(a)(6).  For example, in <u>Lee v. Ikner (In re Ikner)</u>, 883 F.2d 986 (11th Cir. 1989), creditors sought a determination a judgment held against the debtor for injuries suffered in a car accident was nondischargeable pursuant to section 523(a)(6).  The bankruptcy court said it could not "find from inference or innuendo that in the specific instance of the automobile accident, the debtor deliberately and intentionally collided with [the creditor's] car and intended to cause the accident and subsequent injury to the vehicle's occupants."  <u>Id.</u> at 988 (citing bankruptcy court opinion).  On appeal, the district court and the Eleventh Circuit Court of Appeals affirmed, agreeing there was no evidence the debtor intended to cause the accident or resulting injury and, accordingly, the bankruptcy court had correctly concluded the damage was not willful and malicious within the meaning of section 523(a)(6).  <u>Id.</u> at 991.  In <u>Kawaauhau</u>, 523 U.S. 57, the Supreme Court held that section 523(a)(6) only encompasses acts done with the actual intent to cause injury and specifically rejected the notion that every intentional act would meet the willful and malicious standard.  The Court explained that otherwise "[e]very traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic—could fit the description" of willful and malicious.  <u>Id.</u> at 62.

Here, there is no evidence the Mr. Abreu, through his acts, actually intended to damage the car.  While Mr. Abreu may have acted recklessly while driving the vehicle into another car, the facts do not support finding Mr. Abreu either intentionally caused physical damage to the car or knew that such damage was substantially certain to occur based on his conduct.  Accordingly, the Court finds the $500 deductible for damage to the vehicle is dischargeable.

iv.  <u>Use of Cadillac</u>

Ms. Washington contends the $1,800 the state court awarded for Mr. Abreu's use of the Cadillac after he moved out is nondischargeable.  She contends Mr. Abreu willfully withheld payment to her to use the car when he knew nonpayment would financially injure her since she made the monthly payments on a note secured by the car.  Mr. Abreu contends that while he knowingly did not pay Ms. Washington for the car, his failure to pay was not malicious because she allowed him to drive the car in exchange for a dresser and TV and she retained additional property.

The parties did not have a written agreement regarding the car.  The parties nevertheless agree they had an arrangement whereby Mr. Abreu would pay monthly for the car, but Ms. Washington waived the first few payments in return for keeping the dresser and TV.  After a few months, Ms. Washington asked Mr. Abreu to start paying her for the car.  He did not and, eventually, Ms. Washington swore out a warrant for his arrest.  The state court ordered Ms. Washington to return the TV, dresser, and other property and awarded Ms. Washington $1,800 for the entire period of possession, including the first few months.  Effectively, the state court unwound the "barter" portion of the agreement, ordered the return of the property and full payment by Mr. Abreu.  The state court award of $1,800 breaks down to $300 a month from May—November 2015.  The question is whether Mr. Abreu's failure to pay Ms. Washington to drive the Cadillac for all or part of this period was willful and malicious.

In <u>Stock Yards Bank & Tr. Co. v. Zaepfel (In re Zaepfel)</u>, 2020 WL 609617 (Bankr. W.D. Ky. Feb. 7, 2020), the court was faced with a similar challenge of determining what portion of a debt owed by the debtor was nondischargeable due to debtor's willful and malicious conduct.  The plaintiff argued the debtor committed a willful and malicious injury by making $9,500 in debit

card withdrawals of cash from a bank account without plaintiff's authorization.  The court found not all of the withdrawals were done with a willful and malicious motive and some of the earlier withdrawals by the debtor were authorized.  The court ultimately had to "pick a moment in time after which any cash withdrawal was a 'willful and malicious injury.'"  Id. at *8.

Here, Ms. Washington admittedly agreed to waive the first few months of payments in exchange for keeping a dresser and TV.  When she excused Mr. Abreu from paying for the car for the first few months, it was reasonable for Mr. Abreu to assume he was not required to pay Ms. Washington to drive the car for a few months.  Ms. Washington did not present any evidence to the contrary and in fact agreed payments were not initially required.  Accordingly, Mr. Abreu's failure to pay Ms. Washington for the Cadillac for the first three months is not willful and malicious.

But Mr. Abreu continued to use the car without paying Ms. Washington.  He had previously agreed to pay monthly.  Ms. Washington testified that she asked Mr. Abreu to start making payments for the car.  At that point, Mr. Abreu had notice Ms. Washington no longer consented to his continued use of the car without paying.  Mr. Abreu refused to respond to her requests and refused to pay.  Mr. Abreu's failure to pay was clearly intentional and thus willful.  The Court finds it was at least substantially certain Mr. Abreu's failure to pay for the Cadillac for the last few months would harm Ms. Washington because she was obligated to pay for the car he was driving.  There was also no just cause for his failure to pay Ms. Washington when he knew he had agreed to pay, Ms. Washington had to make car payments, Ms. Washington had only agreed to waive payments for a few months, and Ms. Washington had requested he pay her for the car.  Mr. Abreu's failure to pay was therefore malicious.  Accordingly, the Court finds damages for the last three

16

months Mr. Abreu drove the car, totaling $900, is nondischargeable.  The remaining $900 related to the car is dischargeable.

v.  Rent

Ms. Washington seeks a determination the $4,200 the state court awarded for back rent is nondischargeable because Mr. Abreu willfully and maliciously withheld rent payments from Ms. Washington, which Mr. Abreu denies.  The Court finds that, as with the car payments discussed above, there came a point at which Mr. Abreu's failure to pay Ms. Washington became willful and malicious.

The state court did not explain its calculation of $4,200.  Mr. Abreu did not make any payments to Ms. Washington for the first year he lived with her.  Ms. Washington did not insist on the first couple months payment but then sought to collect rent.  The evidence showed discussions of $200 and $400 initially, and at some point the parties agreed to $500 a month.  Mr. Abreu's record of payments made began in May 2013, most often at the rate of $500 a month.  Then in 2014, Ms. Washington asked Mr. Abreu to increase his payment.  He begrudgingly texted her saying he would pay $1,200 in June 2014.  This payment appears to be for the months of May and June 2014.  The remaining payments Mr. Abreu made from June 2014 averaged $600 a month for the months paid.  At one point, Ms. Washington asked for rent of $750 a month, but Mr. Abreu responded he would move out rather than pay that amount.  Finally, on May 1, 2015, both parties executed a verification of rent stating the rent was $550.  While this document is signed by both parties, they do not agree $550 a month was the agreed upon rent for that time.

When Mr. Abreu did not have the financial wherewithal to make payments, Mr. Abreu missed seven payments.  Until March 2015, Mr. Abreu regularly paid Ms. Washington, but the timing and amounts of the payments were inconsistent.  Mr. Abreu did not make any payments to

Ms. Washington in March, April, and May 2015, when he decided to move out.  Text messages between the parties show at some point Ms. Washington asked Mr. Abreu for $750 a month and that he refused to pay, saying, "no way, I'm out."

Mr. Abreu's history of paying Ms. Washington rent was not flawless, but not all nonpayment rises to the level of a willful and malicious injury.  Mr. Abreu testified he was financially strapped when he moved in with Ms. Washington.  He stated that while he has held the same job for ten years, his income was significantly less in 2012 and he owed ongoing domestic support obligations.  While the payments were spotty, there is no evidence Mr. Abreu intended any injury to Ms. Washington when he failed to pay rent in December 2013, August and September 2014, and January 2015.

The Court finds Mr. Abreu's failure to pay rent from March through May 2015 was both willful (deliberate and intentional) and malicious (wrongful and without excuse).  Mr. Abreu was employed and soon moved into his own apartment, so Mr. Abreu had an ability to pay rent (and he bought a $219,100 house in 2017).  In the spring of 2015, Mr. Abreu's failure to pay rent was not merely accidental and was without just cause.  He lived at in Ms. Washington's home, he had been paying rent, he knew she demanded rent, and he knew she had a monthly mortgage payment.  His failure to pay rent was certain or almost certain to cause financial harm to Ms. Washington.  The Court therefore concludes rent for March—May 2015 is attributable to Mr. Abreu's willful and malicious conduct and is nondischargeable.  The evidence did not disclose how the state court arrived at its $4,200 damages for back rent.  The evidence showed the rent paid varied.  The Court relies on the verification of rent signed by both parties and concludes $550 a month is a fair measure of damages.  Therefore $1,650 of the rent award is nondischargeable; the remaining rent damages are dischargeable.

18

vi.  Court Costs

Finally, Ms. Washington seeks a determination $220 for court costs is nondischargeable. Collateral losses arising from a debtor's wrongful conduct, such as attorney's fees and costs, may be nondischargeable. Loder v. Icemakers, Inc. (In re Loder), 796 F. App'x 698, 701 (11th Cir. 2020). Thus, court costs that directly flow from willful and malicious acts may be nondischargeable under section 523(a)(6). See AU Pharm. v. Whitner (In re Whitner), 179 B.R. 699, 703 (Bankr. E.D. Okla. 1995) (attendant court costs deemed nondischargeable pursuant to section 523(a)(6)); Mills v. Ellerbee (In re Ellerbee), 177 B.R. 731, 744 (Bankr. N.D. Ga.1995) (attorney's fees in state court judgment that gave rise to nondischargeable judgment debt likewise excepted from discharge as an additional kind of damages flowing from debtor's underlying willful and malicious tort), aff'd, 78 F.3d 600 (11th Cir. 1996). However, court costs not directly attributable to willful and malicious conduct are dischargeable. For example, in Hinty v. Horton (In re Horton), 2018 WL 4220786 (Bankr. W.D. Va. Aug. 21, 2018), the debtors' former landlord initiated an adversary proceeding seeking to except repair costs, interest, and court costs from discharge pursuant to section 523(a)(6). The court found that only a portion of the damages were nondischargeable and the balance of the debt, including the court costs, was dischargeable.

The state court awarded Ms. Washington court costs. The Court has determined not all Mr. Abreu's conduct giving rise to the state court judgment was willful and malicious and, accordingly, the judgment is only nondischargeable in part. The court costs were linked to an underlying judgment for damages, some of which are dischargeable and some of which are not. The court costs would have been incurred in the same amount regardless of whether the judgment is dischargeable or nondischargeable, so no basis exists for prorating court costs. The court costs

19

are therefore not all the proximate cause of Mr. Abreu's willful and malicious behavior. Accordingly, the Court finds the court costs are dischargeable.

### d.  <u>Counterclaim for Attorney's Fees</u>

Mr. Abreu seeks fees as a sanction for responding to the complaint, though Mr. Abreu does not specify on what grounds he seeks such relief.  Generally, under the American Rule, each party to a lawsuit bears its own attorney's fees, and a prevailing party in federal court is not entitled to an award of attorney fees. <u>See</u> <u>Alyeska Pipeline Serv. Co. v. Wilderness Society</u>, 421 U.S. 240, 247 (1975).  While there is no general right to recover attorney's fees, section 523(d) specifically addresses the recovery of attorney's fees to the prevailing party in a nondischargeability action.  It provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).  The purpose of Section 523(d) is to discourage creditors from bringing actions in hope of obtaining a settlement from an honest debtor anxious to save attorney's fees.  <u>Capital Chevrolet v. Bullock (In re Bullock)</u>, 317 B.R. 885, 891 (Bankr. M.D. Ala. 2004); <u>see also</u> <u>TranS. Fin. Corp. of Fla. v. Johnson</u>, 931 F.2d 1505, 1509 (11th Cir. 1991) (noting that Section 523(d) itself allows an honest debtor to defend against a dischargeability action without regard to the cost of attorney's fees).

To support a request for attorney's fees under section 523(d), a debtor initially needs to prove: (1) that the creditor sought to except a debt from discharge under section 523(a); (2) that the debt was a consumer debt; and (3) that the debt ultimately was discharged.  <u>Gurta v. DeLong (In re DeLong)</u>, 2014 WL 4059790, *7 (Bankr. N.D. Ga. July 14, 2014) (citing <u>In re Stine</u>, 254

B.R. 244, 249 (9th Cir. B.A.P. 2000)). "Once the debtor establishes these elements, the burden shifts to the creditor to prove that its actions were substantially justified." Id. To satisfy the substantial justification requirement, the creditor must demonstrate that it had a reasonable factual and legal basis for its claim. Id. (citing In re Machuca, 483 B.R. 726, 733 (9th Cir. B.A.P. 2012)).

In order for section 523(d) to be applicable, the debt in question must have been a consumer debt. Section 101(8) defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." Whether a particular secured debt constitutes "consumer debt" depends on the purpose of the debt. Turner v. Johnson (In re Johnson), 318 B.R. 907 (Bankr. N.D. Ga. 2005). Classification of debts other than those arising from typical consumer credit transactions has proven difficult, and the mere fact that a judgment is not a "business" debt does not mean it per se fits the definition of a "consumer" debt. See e.g., In re Peterson, 524 B.R. 808, 813 (Bankr. S.D. Ind. 2015) (finding an intentional tort judgment was not consumer debt because it arose involuntarily).

Furthermore, section 523(d) applies only where the creditor has brought an action to determine a debt nondischargeable under section 523(a)(2). It is not applicable to prevailing parties in litigation arising under other subsections of section 523. Matthews v. Gamboa (In re Gamboa), 2020 WL 5587431, *2 (Bankr. W.D. Okla. Sep. 17, 2020). For example, in The Infinity Grp., LLC v. Lucas (In re Lucas), 477 B.R. 236, 248 (Bankr. M.D. Ala. 2012), the court concluded section 523(d) was not applicable where the debt was not a consumer debt and the creditor had filed a claim under section 523(a)(4).

Assuming a debt is a consumer debt, a debtor is only entitled to fees if the debt is ultimately discharged and the creditor's actions were not substantially justified. Fees are often appropriate, for example, when a creditor loses an action otherwise filed in good faith by summary judgment,

directed verdict, or a judgment on the pleadings, all of which are outcomes that can suggest a lack of substantial justification.  DeLong, 2014 WL 4059790 at *7.  "The standard, however, should not be read to raise a presumption that the creditor was not substantially justified, simply because it lost the challenge."  Id.  In DeLong, the court found the debtor was not entitled to fees because, though the creditor ultimately lost at trial, the creditor was justified in pursuing her claims.  In Stinson v. Robinson (In re Robinson), 525 B.R. 822, 826 (Bankr. N.D. Ga. 2015), the court found the creditor's section 523(a) counts failed as a matter of law.  Nevertheless, the court found, given the creditor was pro se, the creditor's complaint was substantially justified in that it had a "reasonable basis both in law and in fact," and it would be unjust to penalize her for having only a lay person's knowledge of the law.  Id. at 826 n. 7 (citing In re King, 258 B.R. 786, 798 (Bankr. D. Mont. 2001)).

To the extent Mr. Abreu has asserted recovery of his fees based on section 523(d), the Court finds the section is not applicable here.  First, Mr. Abreu has not established the debt represented by the judgment is a consumer debt.  Further, Ms. Washington sought a determination the debt is nondischargeable pursuant to section 523(a)(6), not 523(a)(2).  Finally, Ms. Washington's arguments are not unfounded.  In fact, the Court has found in favor of Ms. Washington on several aspects and has determined that some of the damages in the state court judgment are nondischargeable.  As in Robinson, the Court finds Ms. Washington had a reasonable basis in both law and in fact to file the complaint and fees are not justified here.  Accordingly, the Court finds attorney's fees are not warranted under section 523(d).

In addition to section 523(d), the Court may award fees as a sanction when a party has acted in bad faith.  Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991).  Federal courts, including bankruptcy courts, have inherent authority to impose sanctions for a litigant's bad faith conduct.

Id. at 44.  This authority includes assessing attorney fees against the offending party.  Id. at 45.
The inherent power to sanction "must be exercised with restraint and discretion."  Id. at 44.  The
award must be compensatory, not punitive, in nature.  Goodyear Tire & Rubber Co. v. Haeger,
137 S.Ct. 1178, 1186 (2017).  To impose sanctions using the Court's inherent authority, the Court
must find that Ms. Washington acted "in bad faith, vexatiously, wantonly, or for oppressive
reasons," Chambers, 501 U.S. at 45-46, or has delayed or disrupted litigation or "taken actions in
the litigation for an improper purpose."  Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001).  "A
finding of bad faith is warranted where [the party] 'knowingly or recklessly raises a frivolous
argument, or argues a meritorious claim for the purpose of harassing an opponent.'"  Id. at 649.
When the court shifts fees, it may "shift only those attorney's fees incurred because of the
misconduct at issue."  Goodyear Tire & Rubber Co., 137 S.Ct. at 1186.

While Mr. Abreu argues that Ms. Washington's conduct in this adversary proceeding was
unreasonable, Ms. Washington did not initiate this case in bad faith and has not taken actions for
an improper purpose.  The Court has found in favor of Ms. Washington to the extent of $3,250.
Accordingly, the Court finds attorney's fees are not warranted.

## III.   CONCLUSION

For the reasons stated above, the Court finds Ms. Washington has a claim that was neither
listed nor scheduled and she had no actual notice of Mr. Abreu's bankruptcy case in order to timely
file a nondischargeability complaint.  The Court further finds Ms. Washington's claim is partially
of a kind that is nondischargeable pursuant to section 523(a)(6).  The following damages are due
to Mr. Abreu's willful and malicious actions and are nondischargeable: $700 for door and wall
damage, $900 for the Cadillac, $1,650 for rent.  The remaining damages of $1,571.69 for insurance

benefits, $500 for a car insurance deductible, $2,550 for back rent, $900 for the use of a Cadillac, and $220 for court costs are dischargeable.  Finally, Mr. Abreu is not entitled to attorney's fees.

The Court will enter a separate judgment.

**<u>END OF ORDER</u>**

**<u>Distribution List</u>**

**Franklin Abreu**
7774 Flyaway Road
Fairburn, GA 30213

**Louis L. McLendon**
McLendon Law Group, LLC
Suite 200
1770 Indian Trail Road
Norcross, GA 30093

**Kyle A. Cooper**
Chapter 7 Trustee
120 Travertine Trail
Alpharetta, GA 30022

**Lillian L Washington**
3607 Heritage Estates
Lithonia, GA 30038